**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| VALUE CHAIN SOLUTIONS, LLC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 09-2586-JAR |
| ) | |
| QUALITY ONE WIRELESS, LLC and ) | |
| QUALITY ONE WIRELESS, INC., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

This is a breach of contract action that was removed from Johnson County, Kansas

District Court on November 12, 2009 based on diversity of citizenship jurisdiction.  It is before

the Court on defendants Quality One Wireless, LLC and Quality One Wireless, Inc.'s Motion to

Dismiss Plaintiff's Claims for Lack of Personal Jurisdiction or in the Alternative to Transfer

Venue (Doc. 6).  The motion argues that there is no personal jurisdiction over defendants, both

citizens of Florida, and alternatively, venue is improper and the case should be transferred to the

Central District of Florida.  The motion is fully briefed and the Court is prepared to rule.  As

described more fully below, the Court denies defendants' motion.

**I.      Motion to Dismiss for Lack of Personal Jurisdiction**

*A.      Rule 12(b)(2) Standard*

"The burden of establishing personal jurisdiction over the defendant is on the plaintiff."[1]

It is well settled that the court may consider affidavits and other written materials in resolving a

---

[1] *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).

motion made pursuant to Rule 12(b)(2).[2]  When the evidence presented on the motion to dismiss consists of affidavits and other written materials, as is the case here, the plaintiff need only make a prima facie showing of personal jurisdiction.[3]  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[4]  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable."[5]  The court "must resolve all factual disputes in favor of the plaintiff."[6]

### B.    Background

The following facts are derived from the Petition, as well as affidavits and other written materials submitted by the parties.  All factual disputes are resolved in favor of plaintiff.

Plaintiff Value Chain Solutions, LLC, ("Value Chain") is a Kansas limited liability company.  Defendant Quality One Wireless, LLC is a Nevada limited liability company and Defendant Quality One Wireless, Inc. is a Florida corporation (collectively "Quality One").  John Chiorando is the President of Quality One Wireless, Inc. and a managing member of Quality One Wireless, LLC.  Quality One is in the business of selling, servicing and distributing wireless devices.

Steve DeBusk is a member of Value Chain and a longtime acquaintance of Todd J.

---

[2]*Id.* at 1295-96.

[3]*Id.*

[4]*OMI Holdings, Inc.v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[5]*Id.* (quotation omitted).

[6]*Bell Helicopter Textron*, 385 F.3d at 1295.

Levin, a Michigan resident and officer and/or employee of both defendants. DeBusk and Levin traveled to Orlando, Florida in 2007 to meet with Chiorando. At the meeting, DeBusk proposed to Chiorando that Quality One directly employ DeBusk to market its wireless devices to DeBusk's industry contacts, including C Work Solutions. Chiorando told DeBusk that he was not interested.

Later, Chiorando contacted DeBusk and told him that he may be interested in a business relationship if the work was done independently on a commission basis to be agreed upon with Levin. DeBusk communicated by email with Levin at Value Chain's offices in Johnson County, Kansas. On January 19, 2008, DeBusk emailed Levin with projections for C Work Solutions wireless device purchase needs. Levin responded on January 21, 2008 that he was trying "to come up with a viable solution for your thoughts below," and that he wanted to talk with DeBusk about the issue the following day. DeBusk responded, proposing that defendants pay Value Chain a 4% commission on gross sales. Levin explained that he was concerned about the 4% commission and asked if payments could be scheduled on the first and fifteenth day of each month. DeBusk replied, agreeing to the payment dates suggested by Levin, and stating that it is "Your call, let me know. I need to get back to him no later than Thursday. He is with Verizon on Wed. so nothing else will happen till Thursday."[7] Levin responded on January 23, 2008:

> Check will go today for tomorrow, just got the funds. I want us
> both to make money . . . . always have. I will commit to the 1st
> and 15th. 4% is fine on PUTC and we will handle new deal by
> deal. I have the 1700 Fire Red New left in Stock and 2300 Silver
> New from MOTO USA 3000 factory RB complete. Alex wants to
> pay $130, has to be $140 we paid $130. I even told him I would
> ship the units pre PO so Pat could QC them. Let's make 08 a good

---

[7](Doc. 9, Ex. A at 1.)

year for both of us.

Levin's signature block states that he is, "President Apple Cellular LLC."

From January 23, 2008 through mid-November 2008, DeBusk marketed Quality One's wireless devices for purchase by C Work Solutions through numerous and frequent, sometimes daily, phone calls and emails from Value Chain's offices in Johnson County, Kansas. Quality One continued to specify devices for sale and sent to Value Chain recapitulations of C Work Solutions' purchase orders to memorialize sales and provide the basis for calculating commissions owed.

Quality One paid Value Chain a percentage of the gross sales between Quality One and C Work Solutions and those checks were made payable to Value Chain and mailed from Florida to Kansas. C Work Solutions' principal place of business is York, Pennsylvania and all products that flowed from Quality One to C Work Solutions were shipped to York, Pennsylvania.

Quality One stopped paying Value Chain's commission on purchase orders of its wireless devices to C Work Solutions. On November 16, 2008, DeBusk emailed Levin and stated that he was "done. Can not [sic] get paid, can not [sic] get calls. It is impossible to manage business with Pat without both. I told him this was going to happen if I did not get a call. . . . Pls. send me what I am owed thru Oct and what we have coming on existing PO's."

Defendants do not have offices in Kansas and are not registered to do business in Kansas. No representative from Quality One has traveled to Kansas for business purposes related to this matter. Defendants have no customers in Kansas.

### C. *Discussion*

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which [the defendant] has established no meaningful 'contacts, ties, or relations.'"[8] To obtain personal jurisdiction over a nonresident defendant in a diversity action, the plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.[9]  In *OMI Holdings, Inc. v. Royal Insurance Co. of Canada*,[10] the Tenth Circuit noted that because the Kansas long arm jurisdiction statute is liberally construed by Kansas courts, jurisdiction is generally considered proper under Kansas law and courts proceed directly to the due process issue.[11]  The Due Process Clause allows the exercise of personal jurisdiction over a nonresident defendant, so long as there are "minimum contacts" between the defendant and the forum state.[12]

The minimum contacts standard may be met in one of two ways: specific jurisdiction or general jurisdiction.  Specific jurisdiction exists if the nonresident defendant has purposefully availed itself of the privilege of conducting business in Kansas, and the injuries arise from the defendant's forum related activities.[13]  If a court's exercise of jurisdiction does not directly arise from a defendant's forum related activities, the court may nonetheless maintain general personal

---

[8]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985).

[9]*See, e.g.*, *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

[10]149 F.3d at 1090 (citing *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994)).

[11]*Id.*

[12]*Intercon*, 205 F.3d at 1247 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

[13]*OMI Holdings*, 149 F.3d at 1091.

jurisdiction over the defendant based on the defendant's general business contacts with the forum state.[14] General jurisdiction exists when the defendant's contacts with the forum state are "so continuous and systematic that the state may exercise personal jurisdiction even when the claims are unrelated to the defendant's contacts with the forum state."[15] For such jurisdiction to exist, the defendant must be conducting "substantial and continuous local activity in the forum state."[16]

Both parties confine their arguments on minimum contacts to a specific jurisdiction analysis. This involves a two-step inquiry: (1) whether "'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there,'"[17] and if so, (2) "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice."[18]

### 1.      Minimum Contacts

In determining whether a defendant has established sufficient minimum contacts with the forum state, the court examines whether the defendant purposefully availed itself of the privilege of conducting activities within the forum state.[19] "A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and . . . the plaintiff's

---

[14]*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984).

[15]*SF Hotel Co., L.P. v. Energy Invs., Inc.*, 985 F. Supp. 1032, 1033 (D. Kan. 1997) (citing *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532–33 (10th Cir. 1996)).

[16]*Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (citations omitted).

[17]*Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)), *cert. denied*, 544 U.S. 974 (2005); *see also, e.g.*, *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276–77 (10th Cir. 2005).

[18]*Benton*, 375 F.3d at 1076 (quotations omitted).

[19]*Pro Axess, Inc.*, 428 F.3d 1277.

claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum."[20]  This requirement of purposeful availment precludes jurisdiction as the result of random, fortuitous, or attenuated contacts with the forum.[21]  "The touchstone of a minimum contacts analysis is whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'"[22]  "In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation."[23]

"A contract between a nonresident and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum."[24]  To determine whether a defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state, courts often look at "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'"[25]  Even an unsigned contract may provide proof of a contract if it clearly references the parties and evidences prior negotiations and the future consequences of an intended business relationship, particularly when there is other evidence of the business

---

[20]*Id.* (quotation omitted).

[21]*Bell Helicopter Textron, Inc.v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004).

[22]*Benton*, 375 F.3d at 1078 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[23]*Calder v. Jones*, 465 U.S. 783, 788 (1984).

[24]*Benton*, 375 F.3d at 1077.

[25]*AST Sports Science, Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

relationship.[26]

Defendants argue that the only connection between them and Kansas is that the commission checks were sent by them through the mail to plaintiff in Kansas and that plaintiff's principal place of business is in Kansas. They argue that the contract at issue is an oral agreement that was formed in Florida and that no part of the contract was performed in Kansas. They further emphasize that they have no operations in Kansas, no customers in Kansas, and have never traveled to Kansas. Plaintiff responds that the contract was formed by a series of emails; the contract was formed in Kansas because that is where Value Chain received, opened, and read Quality One's January 23, 2008 email accepting DeBusk's offer of payment to market C Work Solutions. And even if the contract was not made in Kansas, plaintiff argues that it was performed in whole or in part in Kansas, as Value Chain marketed C Work Solutions to purchase Quality One's devices through phone calls and email originating from its office in Kansas.

There is a factual dispute about the formation of the contract at issue. Defendants claim that it is an oral contract that was formed in Florida; plaintiff claims that Chiorando was not interested in DeBusk's proposal in Florida and that the contract was formed through a series of emails in Kansas. At this stage, the Court is to resolve all factual disputes in favor of plaintiff, so the Court assumes that the contract at issue was not formed in Florida, but instead by email subsequent to the meeting with Chiorando in Florida.

Defendants claim that the contract alone cannot establish minimum contacts because the only jurisdictional contacts involve the emails between Levin and DeBusk and the commission checks sent by defendants to Kansas. But the emails submitted by plaintiff suggest an ongoing

---

[26]*Id.* at 1058–59.

business relationship between these parties that lasted for approximately nine months.  DeBusk and Levin communicated frequently about the marketing agreement by email, and DeBusk attests that Value Chain marketed defendants' products to C Work Solutions through numerous, sometimes daily, phone calls and emails from Value Chain's office in Kansas.  This type of frequent communication "can eliminate the need for physical presence" and is evidence of defendants' continuing business relationship with plaintiff.[27]

Certainly, even at the formation stage, the parties contemplated an ongoing relationship, as they negotiated payments on specified days of "each" month.  The trip to Florida in January 2008 suggests prior negotiations that did not ripen until DeBusk and Levin communicated by email later that month.

In addition, defendants specified their devices for sale and sent Value Chain recapitulations of C Work Solutions purchase orders to memorialize sales and provide the basis for calculating the commissions owed.  Then, defendants mailed the commission checks to plaintiff's office in Kansas.  This is further evidence of an ongoing relationship that had future consequences in mind.  All of this evidence is sufficient to make a prima facie showing of minimum contacts.

### 2. Traditional Notions of Fair Play and Substantial Justice

The Court must also analyze whether its exercise of jurisdiction is reasonable by determining whether or not it "offends notions of fair play and substantial justice."[28]  In doing so, the Court must consider the following factors:

---

[27]*Id.* at 1059 (discussing and quoting *Burger King Corp.*, 471 U.S. at 476).

[28]*Asahi Metal Indus. v. Superior Court*, 480 U.S. 102, 113 (1987).

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.[29]

This reasonableness inquiry is conducted on a sliding scale: "the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction."[30]

Defendants contend that jurisdiction is unreasonable because of the weak minimum contact showing, all employees, records, and other materials are maintained in Florida, and all sales records are maintained by C Work Solutions in Pennsylvania. Initially, the Court notes that plaintiff's minimum contacts showing is not particularly weak; therefore, the showing of unreasonableness necessary to defeat jurisdiction is not slight.

"While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction."[31] It is uncontroverted that defendants' only contacts with Kansas involved communications and transactions with a Kansas business. However, "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."[32] The Court does not find that the exercise of jurisdiction over these defendants would be so burdensome as to be unreasonable.

---

[29]*Id.*; *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998).

[30]*Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005).

[31]*OMI Holdings, Inc.*, 149 F.3d at 1096.

[32]*AST Sports Science, Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1061 (10th Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

The second factor weighs in favor of Kansas exercising jurisdiction over this matter. "'States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors.'"[33] Furthermore, to the extent Kansas law governs the contract at issue, the State of Kansas has an interest in providing Value Chain with a forum to litigate.[34] Likewise, plaintiff's interest in receiving a convenient and effective forum weighs in favor of exercising jurisdiction.

The fourth factor regarding the interstate judicial system's interest in efficient resolution asks "whether the forum state is the most efficient place to litigate the dispute," by looking to "location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation."[35] Defendants argue that employees, records, and other materials are maintained in Florida, and Pennsylvania, making Kansas an inefficient forum. Yet, witnesses and records for plaintiff are located in Kansas, as evidenced by DeBusk's affidavit. According to the Petition and the DeBusk affidavit, the contract was formed in Kansas and Kansas law governs the breach of contract claim.

The Court does not find that the fifth factor is implicated in this case. There is no indication that the Court's exercise of jurisdiction would be affect the substantive social policy interests of another state.[36]

---

[33]*Id.* (quoting *OMI Holdings*, 149 F.3d at 1096).

[34]*Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005).

[35]*AST Sports Science, Inc.*, 514 F.3d at 1062.

[36]*See id.* at 1062–63.

Because plaintiff has made a prima facie showing of personal jurisdiction, defendants must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable. Defendants have not made such a showing; therefore, the Court denies defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2).

## III. Motion to Dismiss for Improper Venue

In the alternative, defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue. When a defendant challenges venue, the plaintiff has the burden of showing that venue is proper.[37] Pursuant to 28 U.S.C. § 1391(a):

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

It is undisputed that neither defendant resides in Kansas. Defendants argue that venue is improper because no substantial part of the events or omissions giving rise to the claim occurred in Kansas.

> "A substantial part of the events" may have occurred in more than one district, and venue may be proper even if contacts with another district were more substantial. *See Andrean v. Secretary of the United States Army*, 840 F. Supp. 1414, 1422-23 (D. Kan.1993); *Merchants Nat. Bank v. SafraBank*, 776 F. Supp. 538, 541 (D. Kan.1991). Put another way, "[t]he statute does not posit a single appropriate district for venue; venue may be proper in any of a number of districts, provided only that a substantial part of the

---

[37]*Multi-Media Int'l, LLC v. Promag Retail Servs., LLC*, 343 F. Supp. 2d 1024, 1033 (D. Kan. 2004).

events giving rise to the claim occurred there." *Woodke v. Dahm*, 70 F.3d at 985 (citation omitted). "[T]he appropriate forum for a case is any forum in which a substantial part of the events or omissions giving rise to the claim occurred." *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir.1998). "The court must decide whether the forum activities played a substantial role in the circumstances leading up to the plaintiff's claim." *Andrean*, 840 F. Supp. at 1422. "The forum activities must have been events significant to the plaintiff's claims."[38]

Here, while the Central District of Florida may be a proper forum for this dispute, that fact does not necessarily mean that the District of Kansas is an improper forum. The contract was allegedly formed in Kansas, it was at least partially performed in Kansas, and defendants had contacts with Kansas in the form of mailings, emails, and telephone communications. Even if a substantial part of the events giving rise to plaintiff's claim took place in Florida, a substantial part of the events also took place in Kansas. Accordingly, the Court finds that venue is proper under section 1391(a).

## IV.     Motion to Transfer Venue

Finally, if the Court finds that venue is proper in Kansas, defendants request transfer to the Central District of Florida pursuant to 28 U.S.C. § 1404, which allows the Court to transfer a civil action to another district or division where the case might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice, . . ."

In determining whether transfer is appropriate under this statute, the Court should consider the plaintiff's choice of forum, the convenience for witnesses, the accessibility of witnesses and other sources of proof, the possibility of obtaining a fair trial, difficulties that may arise from congested dockets, and "all other considerations of a practical nature that make a trial

---

[38]*Wempe v. Sunrise Med. HHG, Inc.*, 61 F. Supp. 2d 1165, 1173 (D. Kan. 1999).

easy, expeditious and economical."[39] The burden of proving that the existing forum is inconvenient lies with the moving party.[40] The plaintiff's forum choice "should rarely be disturbed."[41]

The Court has considered the pertinent factors and declines to grant defendants' motion to transfer this case. The Court gives great weight to plaintiff's choice of forum—Kansas—and is unable to find that the witnesses and evidence are so concentrated in Florida that a transfer would be more convenient for all parties involved compared to Kansas. Certainly, at least one of Value Chain's main witnesses is located in Kansas and it can produce key documents such as purchase orders and cancelled checks in Kansas. Levin, another key witness, is located neither in Kansas nor in Florida. There is no evidence that defendants would receive an unfair trial in Kansas and there are no practical considerations that would make trial in Florida easier. For these reasons, defendants' motion to transfer is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to Dismiss Plaintiff's Claims for Lack of Personal Jurisdiction or in the Alternative to Transfer Venue (Doc. 6) is denied.

Dated: April 19, 2010

S/ Julie A. Robinson
JULIE A. ROBINSON

---

[39] *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1515–16 (10th Cir. 1991) (citing *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1957)).

[40] *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (citing *Chrysler Credit Corp.*, 928 F.2d at 1515).

[41] *Id.*

UNITED STATES DISTRICT JUDGE